UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TYLER RICHARD GUILMETTE,

                Plaintiff,

v.

D. JENSEN,

                Defendant.

_____/

Case No. 1:20-cv-715

Hon. Hala Y. Jarbou


**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by plaintiff Tyler Richard Guilmette, a state prisoner in the custody of the Michigan Department of Corrections (MDOC).   Plaintiff alleged a violation of 42 U.S.C. § 1983.   This matter is now before the Court on defendant's motion for summary judgment for failing to exhaust administrative remedies (ECF No. 12).   The motion is unopposed.

**I.      Background**

Plaintiff is currently incarcerated at the MDOC's Marquette Branch Prison (MBP). However, the events about which plaintiff complains occurred at the MDOC's Ionia Correctional Facility (ICF), where defendant D. Jensen is employed as a corrections officer (CO).   Plaintiff set forth the following allegations in his complaint.   CO Jensen was conducting a regular unit round on June 11, 2019.   At approximately 7:20 a.m., Jensen switched on the light in plaintiff's cell, where he saw plaintiff incapacitated and surrounded by pools of vomit.   Compl. (ECF No. 1,

PageID.5).   Jensen did not know that plaintiff was overdosing on heroin at the time.   *Id*.   Jensen

called for backup.   *Id*.   A handheld video camera recorded the following incident.

> Defendant tried to force Plaintiff to abide by his orders, even though Plaintiff was
> overdosing on Heroin and was incoherent of what Defendant was wanting from
> him. Defendant kept applying pressure to Plaintiff's right shoulder and started
> twisting the arm gaining leverage by placing his weight upon Plaintiff's lower back.
> Defendant was trying to place handcuffs on Plaintiff. [sic] and when the
> meandering and twisting of Plaintiff's arm was not getting the effect that Defendant
> wanted. [sic] Defendant told Plaintiff that he was going to break his arm. [sic] or
> something to that effect. [sic] while he started jerking Plaintiff's shoulder to the
> side. Defendant's action went far beyond the normal procedure and touched on the
> borders of torturing Plaintiff for no other reason than Defendant felt he would get
> away with it because of Plaintiff's incapacitation.

*Id*.   Plaintiff alleged that he had to see medical providers multiple times because of the injury to

his right shoulder, is being prescribed medications for his injury, and is on the waiting list to get

x-rays done to determine the complete damage to his shoulder.   *Id*.

Based on plaintiff's allegations, it appears that plaintiff is suing CO Jensen for the

use of excessive force in violation of the Eighth Amendment.   Plaintiff seeks compensatory and

punitive damages. *Id*. at PageID.6. Although CO Jensen is allegedly employed at ICF in

Michigan's Lower Peninsula (*id*. at PageID.2) and plaintiff is currently incarcerated at MBP in

Michigan's Upper Peninsula, plaintiff asks that the Court "[i]ssue an injunction ordering

Defendant to stop torturing Plaintiff by refusing to feed him and shutting his water off and order

that Defendant cannot be around Plaintiff."   *Id*. at PageID.6.

## II.     Defendant's motion for summary judgment

### A.     Legal standard for summary judgment

Defendant CO Jensen seeks summary judgment because plaintiff failed to exhaust

his administrative remedies prior to filing this lawsuit.   "The court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Rule 56 further provides that a

party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties'

burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).   "In deciding a motion for summary judgment,

the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving

party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

**B.    Failure to Exhaust**

**1.    Exhaustion requirement**

The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 "or any other Federal law" must first exhaust available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).   A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.   One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.   This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).   In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.   *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"   *Jones*, 549 U.S. at 218.   Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint.   *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

**2.    MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances.

*See* Policy Directive 03.02.130 (effective March 18, 2019).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ Q.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ Q and S.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).   Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original).   The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ W.   If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ DD.   Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ HH.

### 3.    Discussion

Plaintiff's MDOC Step III grievance report includes a grievance related to the June 11, 2019 incident.  *See* Grievance ICF-19-12-2054-28e ("2054") (ECF No. 13-3, PageID.71-76).  However, plaintiff did not file this grievance until December 3, 2019.  *Id*. at PageID.74.   The grievance was rejected as untimely, having been filed about six months too late.  *See* Grievance Rejection Letter (PageID.76).   The rejection was upheld at Steps II and III.   *See* Grievance 2054 (PageID.71, 73).   Based on this record, plaintiff has failed to properly exhaust a grievance against

defendant.   *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.   Accordingly,

defendant's motion for summary judgment should be granted.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendant D.

Jensen's motion for summary judgment based on failure to exhaust (ECF No. 12) be **GRANTED**

and that this action be **TERMINATED**.

Dated:   June 16, 2021                                  /s/ Ray Kent
                                                        RAY KENT
                                                        United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).